IN THE SUPREME COURT OF NORTH CAROLINA

2021-NCSC-7

No. 406A19

Filed 12 March 2021

DENNIS D. CHISUM, individually and derivatively on behalf of JUDGES ROAD
INDUSTRIAL PARK, LLC, CAROLINA COAST HOLDINGS, LLC, and
PARKWAY BUSINESS PARK, LLC

v.

ROCCO J. CAMPAGNA, RICHARD J. CAMPAGNA, JUDGES ROAD
INDUSTRIAL PARK, LLC, CAROLINA COAST HOLDINGS, LLC, and
PARKWAY BUSINESS PARK, LLC

Appeal pursuant to N.C.G.S. § 7A-27(a)(2) from an opinion and final judgment

entered on 11 October 2018 and an order and opinion on post-trial motions entered

on 25 April 2019 by Judge Gregory P. McGuire, Special Superior Court Judge for

Complex Business Cases, in Superior Court, New Hanover County, after the case was

designated a mandatory complex business case by the Chief Justice pursuant to

N.C.G.S. § 7A-45.4(b).  Heard in the Supreme Court on 12 October 2020.

*Sigmon Law, PLLC, by Mark R. Sigmon, and Whitfield Bryson & Mason, LLP,
by Daniel K. Bryson, Matthew E. Lee, and Jeremy R. Williams, for plaintiff-
appellee/appellant.*

*Reiss & Nutt, PLLC, by W. Cory Reiss, and Shipman & Wright, LLP, by James
T. Moore and Gary K. Shipman, for defendants-appellants/appellees.*

ERVIN, Justice.

¶ 1     In this appeal from the Business Court, we address a number of issues arising

from a dispute between plaintiff Dennis Chisum and defendants Rocco Campagna

and Richard Campagna concerning their respective membership interests in three related limited liability companies. For the reasons set out below, we affirm the trial court's judgment and orders, in part, and reverse this judgment and those orders and remand, in part.

## I.     Factual Background

**A. Substantive Facts**

### 1.  Formation of Limited Liability Companies

Beginning in the 1990s, The Camp Group–an entity which was equally owned by Richard Campagna and Rocco Campagna–formed three limited liability companies–Judges Road Industrial Park, LLC; Carolina Coast Holdings, LLC; and Parkway Business Park, LLC–for the purpose of developing commercial real estate in Wilmington. Although Mr. Chisum was a founding member of Judges Road and Carolina Coast, he did not become a member of Parkway until 16 October 2007. The members of each LLC entered into company-specific operating agreements which specified (1) the initial capital contributions that each member was required to make; (2) the membership interests of each owner, which were set forth in documents referred to as Schedule 1s[1]; (3) the managers of each LLC; and (4) the rules concerning "capital calls" for the LLCs, which governed requests for additional capital contributions from members over and above the members' initial contributions.

---

[1] The Camp Group transferred its interest in the LLCs to the Campagnas individually in 2007.

The operating agreements specified that member contributions were measured in "capital units," with each $1,000.00 in contributed capital constituting a single capital unit. The operating agreements further provided that members might be required to make additional capital contributions "ratably in accordance with such Members' then existing Membership Interest within the time period approved by the Majority in Interest of the Members" if, in the case of Judges Road and Carolina Coast, a capital call was requested by the managers and approved by "a Majority in Interest of the Members" or if, in the case of Parkway, a capital call was requested by a majority of the members. In the event that any member failed to make the payment required by a capital call, the managers could "elect to allow the remaining Members . . . to contribute to the Company, pro rata by Membership Interest, such Additional Capital Contribution." If one or more of the other members elected to proceed in that fashion, that member would be credited with additional capital units and would obtain a proportionate increase in his or her ownership interest that would be offset by a decrease in the non-contributing members' ownership interests.

The operating agreements further provided that any member's membership interest could be transferred by "sale, assignment, gift, pledge, exchange or other disposition" "after the Membership Interest has been offered to the Company and to the Members," with the seller being required to give "thirty . . . days written notice of his intention to sell or otherwise transfer all or any portion of his interest in the

Company." In addition, the operating agreements included provisions governing the voluntary transfer of membership interests. Between 2007 and 2012, the Campagnas directed a number of capital calls for the three LLCs.

### 2. Dilution of Mr. Chisum's Interest in Judges Road

¶ 5    At the time of its formation in 1996, Mr. Chisum owned a 35% interest in Judges Road, with The Camp Group having served as the manager of Judges Road from its formation until 2007, when Richard Campagna was designated to fulfill the role. By 2010, Mr. Chisum's membership interest in Judge's Road had been reduced to 18.884%. On 25 June 2012, James MacDonald, the attorney for all three LLCs, mailed a letter to Mr. Chisum notifying him that there had been a $100,000.00 capital call for Judges Road and that a meeting had been scheduled for 2 July 2012 in order to amend the Judges Road operating agreement. In addition, the letter stated, in relevant part, that:

> [b]ased on the information provided by the accountant[,] [Richard Campagna] and [Rocco Campagna] have been advised by the accountant that your interest has been diluted to the point that you have no remaining equity in the Company. If you do not participate in this capital call, you will no longer be deemed a member and your interest will be considered diluted in full.

¶ 6    The 2 July 2012 meeting occurred in Mr. Chisum's absence. At the meeting, the Campagnas voted to fully dilute Mr. Chisum's membership interest based upon his failure to make the contribution required by the capital call. According to the

meeting minutes, Mr. Chisum's "membership interest would be exhausted and extinguished if future capital calls were not timely made." The Campagnas, however, took control of the LLC at the conclusion of the 2 July 2012 meeting and failed to either include Mr. Chisum in the making of future operational decisions or correspond with him any further for the purpose of apprising him of his membership status. In addition, the Campagnas failed to amend the Judges Road operating agreement to reflect that Mr. Chisum's membership interest had been extinguished.

¶ 7        On 27 August 2012, the Campagnas paid the entire $100,000.00 capital call that had been made for Judges Road, with this amount being inclusive of Mr. Chisum's portion. In spite of the fact that the Campagnas believed that they each held a 50% ownership interest in Judges Road from and after the date of the 2 July 2012 meeting, Mr. Chisum continued to receive K-1s relating to Judges Road through the 2013 tax year, with Mr. Chisum's 2012 K-1 for Judges Road showing that he held an 18.884% ownership interest in the company and with his 2013 K-1 for Judges Road reflecting that, while he held an 18.884% interest in that company at the beginning of the year, he held no interest whatsoever by its end. The 2013 K-1 for Judges Road that Mr. Chisum received indicated that it was his "[f]inal" Judges Road K-1.

### 3. Dilution of Mr. Chisum's Interest in Parkway

¶ 8        Parkway was formed in 1998 by The Camp Group and Caporaletti Development, LLC, with Anthony Caporaletti and Katrina Caporaletti serving as the

company managers. In 2004, Caporaletti Development resigned from Parkway and sold its membership interest to Carolina Coast, with the Campagnas having become Parkway's managers at that time. Mr. Chisum joined Parkway in 2007 and held an 8.34% membership interest in the company.

After the 2 July 2012 Judges Road meeting, the Campagnas took control of Parkway as well. On 27 August 2013, Parkway mailed Mr. Chisum's 2012 Parkway K-1 to him; this K-1 showed that, at the end of 2012, Mr. Chisum held an 8.34% membership interest in the company. At some point in 2014, Parkway sent Mr. Chisum his 2013 K-1 by means of a letter dated 7 April 2014. The 2013 Parkway K-1 stated that, while Mr. Chisum held an 8.34% ownership interest at the beginning of the year, he had no interest in the company at the end of 2013, with his 2013 K-1 being marked as Mr. Chisum's "[f]inal" Parkway K-1.

### 4. Dilution of Mr. Chisum's Interest in Carolina Coast

At the time of its formation in 2000, Mr. Chisum had a 33.333% membership interest in Carolina Coast. Although Mr. Chisum and the Campagnas each served as managers at the time that the company was organized, the Carolina Coast operating agreement was changed in 2007 to provide for a single manager, a role that Richard Campagna was designated to fill. By 2010, Mr. Chisum's membership interest in Carolina Coast had been reduced to 16.667%.

¶ 11       A Carolina Coast membership meeting was held on 4 October 2010, at which Mr. Chisum was told that he needed to repay a loan that he and his wife, Blanche Chisum, had obtained and that had been secured by the LLCs.  In response, Mr. Chisum argued that the repayment of the loan was not his sole responsibility and that he lacked sufficient funds to repay the loan.  In spite of Mr. Chisum's objections, the Campagnas assessed a capital call in the amount of $63,500.00 against Mr. Chisum, gave Mr. Chisum one week to make the required capital contribution, and warned Mr. Chisum that, in the event that he failed to make the required contribution, his interest in Carolina Coast would be diluted.  After Mr. Chisum failed to make the required payment, the Campagnas paid off the loan on 27 October 2010.

¶ 12       After the 4 October 2010 meeting, the Campagnas acted as if Mr. Chisum's membership interest in Carolina Coast had been extinguished in full.  In 2011, Mr. Chisum received his 2010 K-1, which was marked as his "[f]inal" K-1 relating to Carolina Coast and which stated that Mr. Chisum's membership interest in that company had been reduced to zero.  Although Mr. Chisum believed that his 2010 Carolina Coast K-1 was in error and that he continued to have an ownership interest in Carolina Coast, Mr. Chisum never received another K-1 from Carolina Coast after 2011.

**B. Procedural History**

Mr. Chisum did not take any action to ascertain the status of his membership interest in any of the LLCs until he initiated this action in 2016. In March 2016, Mr. Chisum went to a storage facility owned by Judges Road for the purpose of accessing his complimentary owner's unit. At that time, he was approached by the facility's property manager, who told Mr. Chisum that he could no longer use the storage unit given that Judges Road had sold the facility to a third-party buyer. Upon receiving this information, Mr. Chisum searched the relevant tax records and discovered the existence of a deed transferring the Judges Road storage facility to a new owner on 1 February 2016 for a payment of $5.75 million.

### 1. Original Complaint and Related Proceedings

On 19 July 2016, Mr. Chisum filed a verified complaint against the Campagnas, Judges Road, Parkway, and Carolina Coast in which he asserted claims for (1) conversion, on the theory that the Campagnas had wrongfully converted his ownership interests in the three LLCs to their own use while intentionally concealing their wrongful conduct from him; (2) unfair and deceptive trade practices, on the theory that the Campagnas had converted Mr. Chisum's ownership interests in the LLCs to their own use by making fraudulent capital calls for the purpose of fully diluting his ownership interests; (3) unjust enrichment; (4) a declaration that Mr. Chisum continued to own interests in each of the three LLCs; and (5) a claim seeking judicial dissolution of the LLCs. Based upon these claims for relief, Mr. Chisum

sought an award of compensatory and punitive damages and the dissolution and liquidation of all three LLCs pursuant to N.C.G.S. § 57D-6-02.

¶ 15    On the same day that he filed his complaint, Mr. Chisum sought and obtained the entry of a temporary restraining order against the Campagnas that prevented them from taking any further action that would have the effect of diminishing the LLCs' assets. On 3 August 2016, however, Judge Phyllis M. Gorham entered an order denying Mr. Chisum's request for the issuance of a preliminary injunction and dissolving the temporary restraining order. On 19 August 2016, the Chief Justice designated this case a complex business case. On 19 September 2016, the Campagnas filed an answer to Mr. Chisum's complaint in which they denied the material allegations of the complaint; asserted a number of affirmative defenses, including the expiration of the applicable statutes of limitation, laches, estoppel, waiver, and unclean hands; and sought the dismissal of Mr. Chisum's complaint for failure to state a claim for which relief could be granted pursuant to N.C.G.S. § 1A-1, Rule 12(b)(6).

## 2. Amended Complaint and Related Proceedings

¶ 16    On 8 February 2017, Mr. Chisum filed an amended complaint in which he reasserted the claims that he had alleged against the Campagnas in his original complaint and added derivative claims against the Campagnas on behalf of Judges Road, Parkway, and Carolina Coast. In addition, the amended complaint asserted

claims against Mr. MacDonald; the MacDonald Law Firm, PLLC; Milton Hardison, who served as the accountant for all three LLCs; and Hardison & Chamberlain, CPAs, PA. Finally, the amended complaint asserted (1) derivative and individual claims for breach of fiduciary duty and constructive fraud against the Campagnas; (2) derivative and individual claims for breach of fiduciary duty, constructive fraud, and professional negligence or legal malpractice against Mr. MacDonald and the MacDonald Law Firm; (3) derivative and individual claims for breach of fiduciary duty, constructive fraud, and professional negligence against Mr. Hardison and Hardison & Chamberlain; (4) derivative and individual claims for civil conspiracy against the Campagnas, Mr. MacDonald, the MacDonald Law Firm, Mr. Hardison, and Hardison & Chamberlain; (5) individual claims for conversion and fraud in the inducement against the Campagnas; (6) individual claims for failure to pay distributions, unjust enrichment, and declaratory judgment against the Campagnas and the three LLCs; (7) individual claims for unfair and deceptive trade practices against the Campagnas, Mr. MacDonald, the MacDonald Law Firm, Mr. Hardison, and Hardison & Chamberlain; and (8) an individual claim for judicial dissolution against the LLCs pursuant to N.C.G.S. § 57D-6-02. As a result, based upon these claims, Mr. Chisum (1) derivatively and individually sought to recover punitive damages from the Campagnas, Mr. MacDonald, the MacDonald Law Firm, Mr. Hardison, and Hardison & Chamberlain; (2) individually sought to pierce the

corporate veil in order to hold the Campagnas personally liable "for the debts and obligations of the [three] LLCs, as alleged"; and (3) derivatively and individually sought to recover actual, compensatory, and consequential damages from all of the defendants, jointly and severally.

¶ 17        In March of 2017, each of the defendants filed answers to the amended complaint and moved to dismiss it. By 7 July 2017, each of the derivative and individual claims against Mr. MacDonald, the MacDonald Law Firm, Mr. Hardison, and Hardison & Chamberlain had been voluntarily dismissed, so that the only remaining claims were the individual and derivative claims that Mr. Chisum had asserted against the Campagnas and the LLCs.

### 3. Pre-Trial Rulings by the Trial Court

### a. 20 July 2017 Order on Cross-Motions for Summary Judgment

¶ 18        On 8 February 2017, Mr. Chisum sought partial summary judgment in his favor with respect to the declaratory judgment claim that he had individually asserted against the Campagnas and Judges Road concerning his status as an owner or member of Judges Road. In response, defendants moved for summary judgment in their favor with respect to this claim on the grounds that it was barred by the applicable statute of limitations. On 20 July 2017, the trial court entered an order concluding that Mr. Chisum's declaratory judgment claims were not subject to any statute of limitations given that the amended complaint "allege[d] an actual

controversy between [Mr. Chisum] and Rocco and Richard [Campagna] over their respective rights and obligations as members of Judges Road, irrespective of the claim for conversion"; that the trial court "[could ] not find, and [d]efendants [did] not reference[ ], any North Carolina authority citing to a specific statute of limitations for a declaratory judgment claim"; and that the timeliness of a declaratory action was more appropriately challenged through the assertion of a defense of laches, which defendants had failed to raise in response to Mr. Chisum's declaratory judgment claim. As a result, the trial court denied defendants' summary judgment motion. In addition, after granting Mr. Chisum's summary judgment motion, in part, and determining that the Judges Road operating agreement "would not permit a member's interest to be diluted to zero, or extinguished entirely, by the failure to contribute capital in response to a capital call," the trial court denied the remainder of Mr. Chisum's summary judgment motion.

### b. 7 November 2017 Order on the Campagnas' Motion to Dismiss

On 14 March 2017, defendants filed a motion seeking the dismissal of Mr. Chisum's claims for breach of fiduciary duty, constructive fraud, fraud in the inducement, unjust enrichment, and unfair and deceptive trade practices for failure to state a claim for which relief could be granted pursuant to N.C.G.S. § 1A-1, Rule 12(b)(6) and seeking the dismissal of the fraud in the inducement claim for lack of particularity pursuant to N.C.G.S. § 1A-1, Rule 9(b). On 7 November 2017, the trial

court entered an order granting defendants' motion to dismiss the derivative claims for breach of fiduciary duty and constructive fraud to the extent that they rested upon allegations that defendants had engaged in making "sham" capital calls, improperly attempted to amend the operating agreements, and "[g]enerally attempt[ed] to freeze Mr. Chisum out of the LLCs" while denying defendants' dismissal motions directed to those same claims to the extent that they rested upon allegations that the Campagnas had improperly funneled money and misappropriated corporate opportunities to and from themselves and the LLCs and had sold assets belonging to the LLCs while diverting the proceeds of the relevant transactions to themselves and other entities. Finally, the trial court dismissed Mr. Chisum's individual claims for breach of fiduciary duty, constructive fraud, fraud in the inducement, unjust enrichment, and unfair and deceptive trade practices.

### c. 2 March 2018 Order on Cross-Motions for Summary Judgment

On 15 May 2017, Mr. Chisum filed a motion seeking partial summary judgment in his favor with respect to his claim for a declaration concerning his status as an owner or member of Parkway and Carolina Coast. On 28 July 2017, Mr. Chisum filed a motion seeking partial summary judgment in his favor with respect to his individual claim against Richard Campagna for constructive fraud and his request for the entry of a declaratory judgment against each of the defendants concerning both his status as a member in each of the LLCs and the amount of his

membership interest in each of the LLCs. On 2 August 2017, defendants filed a motion seeking the entry of summary judgment in their favor with respect to each of the remaining claims asserted in the amended complaint.

On 2 March 2018, the trial court entered an order determining that the Parkway and Carolina Coast operating agreements did not permit a member's interest to be extinguished for failure to contribute capital in response to a capital call. On the other hand, the trial court declined to enter summary judgment in Mr. Chisum's favor with respect to the issue of whether Mr. Chisum continued to own an interest in Parkway or Carolina Coast. Finally, the trial court dismissed Mr. Chisum's conversion claim while denying the remainder of defendants' summary judgment motion.

### d. 27 July 2018 Order Vacating Prior Declaratory Judgment Order

On 27 July 2018, the trial court, acting on its own motion, entered an order vacating its prior order determining that the Parkway and Carolina Coast operating agreements did not permit the extinguishment of membership interests based upon a member's failure to comply with a capital call. In making this determination, the trial court stated that, "[u]pon further consideration," "statutes of limitations are appropriately applied to declaratory judgment claims, and . . . laches also may apply under appropriate facts." Based upon that logic, the trial court determined that the three-year statute of limitations for breach of contract actions applied to Mr.

Chisum's declaratory judgment claims and that it lacked the authority to decide the declaratory judgment claims on the grounds that the record reflected the existence of a jury question concerning the extent to which these claims were barred by the applicable statute of limitations.

### 4. Trial

This case came on for trial before the trial court and a jury beginning on 6 August 2018. During the course of the trial, the trial court struck defendants' laches defense as a sanction for discovery violations. On 13 August 2018, the trial court directed a verdict in favor of defendants with respect to all of Mr. Chisum's claims relating to Carolina Coast on statute of limitations grounds and summarized its decision by stating that:

> no reasonable juror could conclude from the evidence that has been presented that Mr. Chisum . . . would not reasonably have known that the Campagnas were in breach of the operating agreement and considered him ousted as an LLC member any later than July—the—prior to the July date in 2013. That would be the three-year mark. . . .
>
> [A]gain, no reasonable juror could conclude that [Mr. Chisum] would not have known that there was a potential breach of his rights under the LLC under the operating agreement as of no later than October of 2011.

On the other hand, at the close of all of the evidence, the trial court denied the defendants' motion for a directed verdict with respect to all of the other remaining claims and submitted those claims for the jury's consideration after rejecting

defendants' request that the trial court instruct the jury with respect to Mr. Chisum's constructive fraud claim that defendants would have rebutted any presumption of fraud arising from a breach of fiduciary duty by showing that they acted openly, fairly, and honestly in their dealings with the LLCs and Mr. Chisum.

¶ 24    On 15 August 2018, the jury returned the following verdict:

1.  Did Dennis Chisum file this lawsuit within three years of the date that he knew, or reasonably should have known, that the Campagnas no longer considered Dennis Chisum to be a member of Parkway and were excluding him from his membership rights in Parkway?

    Yes.

2.  Was Parkway damaged by a failure of Richard Campagna to discharge his fiduciary duties as manager of the company?

    Yes.

3.  Did Richard Campagna take advantage of a position of trust and confidence to bring about the transfer of money and real property from Parkway to himself or his other companies, including the Camp Group, LLC?

    Yes.

4.  What amount, if any, is Parkway entitled to recover from Richard Campagna as damages?

    $128,757.00

5.  Was Parkway damaged by a failure of Rocco Campagna to discharge his fiduciary duties as manager of the company?

No.

6.  Did Rocco Campagna take advantage of a position of trust and confidence to bring about the transfer of money and real property from Parkway to himself or his other companies, including the Camp Group, LLC?

    Yes.

7.  What amount, if any, is Parkway entitled to recover from Rocco Campagna as damages?

    $128,757.00

8.  Did Dennis Chisum file this lawsuit within three years of the date that he knew, or reasonably should have known, that the Campagnas no longer considered Dennis Chisum to be a member of Judges Road and were excluding him from his membership rights in Judges Road?

    Yes.

9.  Was Judges Road damaged by a failure of Richard Campagna to discharge his fiduciary duties as manager of the company?

    Yes.

10. Did Richard Campagna take advantage of a position of trust and confidence to bring about the transfer of money from Judges Road to himself or his other companies, including the Camp Group, LLC?

    Yes.

11. What amount, if any, is Judges Road entitled to recover from Richard Campagna as damages?

    $1.00

12. Was Judges Road damaged by a failure of Rocco Campagna to discharge his fiduciary duties as manager of the company?

     No.

13. Did Rocco Campagna take advantage of a position of trust and confidence to bring about the transfer of money from Judges Road to himself or his other companies, including the Camp Group, LLC?

     Yes.

14. What amount, if any, is Judges Road entitled to recover from Rocco Campagna as damages?

     $1.00

15. Did Richard Campagna and Rocco Campagna conspire to divert money and property from Parkway to the Camp Group, LLC?

     No.

16. Did Richard Campagna and Rocco Campagna conspire to divert money and property from Judges Road to the Camp Group, LLC?

     Yes.

17. What amount of unpaid distributions is Dennis Chisum entitled to receive from Parkway?

     $10,695.00

18. What amount of unpaid distributions is Dennis Chisum entitled to receive from Judges Road?

     $3,927.00

Later that day, the trial court instructed the jury with respect to the amount of punitive damages, if any, that Mr. Chisum was entitled to recover.

¶ 25    On 16 August 2018, the trial court informed the parties that it was "highly likely" that it would order dissolution of Judges Road and Parkway. On the same day, the jury returned a verdict determining that:

> 19. Is Richard Campagna liable to Parkway for punitive damages?
>
>    Yes.
>
> 20. What amount of punitive damages, if any, does the jury in its discretion award against Richard Campagna to Parkway?
>
>    $150,000.00
>
> 21. Is Richard Campagna liable to Judges Road for punitive damages?
>
>    Yes.
>
> 22. What amount of punitive damages, if any, does the jury in its discretion award against Richard Campagna to Judges Road?
>
>    $350,000.00
>
> 23. Is Rocco Campagna liable to Parkway for punitive damages?
>
>    No.
>
> 24. What amount of punitive damages, if any, does the jury in its discretion award against Rocco Campagna to Parkway?
>
>    N/A

25. Is Rocco Campagna liable to Judges Road for punitive damages?

Yes.

26. What amount of punitive damages, if any, does the jury in its discretion award against Rocco Campagna to Judges Road?

$250,000.00

¶ 26    On 11 October 2018, the trial court entered a final judgment which required the Campagnas to pay the compensatory and punitive damages amounts determined to be appropriate by the jury while reflecting the following additional determinations:

> IT IS FURTHER ORDERED, in the Court's discretion, that judgment is entered for [Mr. Chisum] as to [Mr. Chisum]'s claims for declaratory judgment with regard to Parkway and Judges Road. The Court declares that [Mr. Chisum] remains a member of Parkway, with a current percentage of ownership in the company of 8.34%. The Court declares that [Mr. Chisum] remains a member of Judges Road, with a current percentage of ownership in the company of 18.884%.
>
> IT IS FURTHER ORDERED that, in the Court's discretion, judgment is entered for [Mr. Chisum] against Defendants on [Mr. Chisum]'s claims for judicial dissolution of Parkway and Judges Road pursuant to [N.C.G.S.] § 57D-6-02(2)(i).[2] The evidence at the trial established that it is not practicable for [Mr. Chisum] and the Campagnas to conduct the business of Parkway and Judges Road in conformance with the operating

---

[2] Subsection 57D-6-02(2) provides that "[t]he superior court may dissolve an LLC in a proceeding brought by . . . [a] member, if it is established that (i) it is not practicable to conduct the LLC's business in conformance with the operating agreement and this Chapter or (ii) liquidation of the LLC is necessary to protect the rights and interests of the member." N.C.G.S. § 57D-6-02(2) (2019).

agreements. Parkway, once it is reinstated, and Judges Road are hereby dissolved.

IT IS FURTHER ORDERED that, in the Court's discretion, pursuant to [N.C.G.S] §§ 1-502(2) and 57D-6-04, in order to carry the judgment into effect, the Court in its discretion shall appoint a receiver for Parkway and for Judges Road under the authority and subject to the duties as set forth in the separately entered orders of this date.

On the same date, the trial court entered orders appointing George M. Oliver to serve as the receiver for Parkway and Judges Road.

### 5. Post-Trial Motions

On 22 October 2018, defendants filed a number of post-trial motions. First, defendants filed a motion seeking the entry of judgment in their favor notwithstanding the verdict pursuant to N.C.G.S. § 1A-1, Rule 50(b), on the grounds that (1) Mr. Chisum's claims for declaratory judgment were barred by the statute of limitations, a fact that deprived him of the standing needed to maintain the derivative claims, or, in the alternative, that judgment should be entered in defendants' favor with respect to the derivative claims for breach of fiduciary duty and constructive fraud on the grounds that Mr. Chisum had failed to prove the actual damages that were necessary to support those claims; (2) concerning the verdict in favor of Judges Road regarding the derivative claims that had been asserted against Rocco Campagna, it was legally inconsistent for the jury to have found Rocco Campagna liable for constructive fraud without also finding him liable for breach of

fiduciary duty; (3) with respect to the derivative claims for constructive fraud, the evidence elicited at trial demonstrated that the Campagnas had acted in an open, fair, and honest manner, with this fact sufficing to rebut the presumption that they were liable for constructive fraud; and (4) the punitive damages awards in favor of Judges Road and Parkway cannot be predicated upon the underlying claims for liability or, in the alternative, that the punitive damages claim by Judges Road cannot stand in light of the jury's determination that Judges Road had not suffered any actual damages of the type necessary to support a claim for breach of fiduciary duty or constructive fraud.

In an alternative motion for a new trial, defendants contended that a new trial was necessary because (1) the jury had been erroneously instructed that the statute of limitations applicable to Mr. Chisum's declaratory judgment claims did not begin to run until Mr. Chisum had been put on notice of the existence of these claims; (2) the derivative claims for breach of fiduciary duty and constructive fraud required proof of actual, rather than merely nominal, damages; (3) with respect to the breach of fiduciary duty and constructive fraud claims involving Judges Road, the jury had failed to find the existence of actual damages; (4) the jury returned legally inconsistent verdicts given that it had found Rocco Campagna liable for constructive fraud while refraining from finding him liable for breach of fiduciary duty; and (5) the trial court erred by failing to instruct the jury that a finding that the Campagnas

had acted openly, fairly, and honestly sufficed to rebut the presumption of constructive fraud.  In an alternative motion to alter or amend the judgment pursuant to N.C.G.S. § 1A-1, Rules 59(a) and (e), defendants argued that (1) the total amount of punitive damages awarded to Judges Road should be reduced to the maximum statutory cap of $250,000.00 pursuant to N.C.G.S. § 1D-25(b) and that it was unclear as to whether the jury had intended to return identical damage awards against Richard Campagna and Rocco Campagna or whether the jury believed that the trial court would divide a single award of $128,757.00 between those two defendants; (2) the judgment concerning the dissolution of the LLCs and the appointment of a receiver should be altered or amended based upon a contention that the record did not contain sufficient evidence to justify the adoption of dissolution as a remedy, that the trial court had failed to afford the Campagnas a hearing with respect to dissolution-related issues as required by statute, and that the appointment of a receiver was "unnecessary and unwarranted"; (3) they should have been given the option of purchasing Mr. Chisum's remaining membership interests in the LLCs pursuant to N.C.G.S. § 57D-6-03(d); and (4) the required hearing was not held prior to the trial court's appointment of a receiver.  In addition, defendants filed a motion for relief from the trial court's orders appointing a receiver and for the trial court to direct that the LLCs pay the receiver-related fees and expenses specified in the trial court's orders appointing receivers for Judges Road and Parkway and a motion

seeking the entry of a stay of the trial court's final judgment and of the orders appointing receivers for Judges Road and Parkway pending disposition of their other post-trial motions.

¶ 29      Similarly, Mr. Chisum filed a series of post-trial motions on 22 October 2018 in which he sought (1) the entry of judgment notwithstanding the verdict with respect to the declaratory judgment claim relating to his ownership interest in Carolina Coast or, in the alternative, a new trial or an alteration or amendment of the judgment relating to that claim; (2) a new trial concerning the other claims that Mr. Chisum had asserted related to Carolina Coast; (3) an amendment to the judgment cancelling the deeds that transferred the property to The Camp Group; and (4) an amendment to the judgment to bar the Campagnas from receiving distributions that included any of the punitive damages amounts that they had been ordered to pay to Parkway or Judges Road.

¶ 30      On 5 December 2018, the trial court stayed the execution of the final judgment and its orders appointing a receiver for Judges Road and Parkway while directing the Campagnas to post bond in the amount of $600,000.00, an action that the Campagnas took on or about 5 February 2019. On 6 February 2019, the trial court entered an order divesting the receiver who had been appointed to operate and dissolve Parkway and Judges Road of his authority to act in that capacity pending the resolution of the post-trial motions. On 25 April 2019, the trial court entered an order addressing the

parties' post-trial motions. In its order, the trial court amended its judgment by reducing the amount of punitive damages awarded to Judges Road against Richard Campagna to the statutorily-prescribed sum of $145,825.00 and reduced the amount of punitive damages awarded to Judges Road against Rocco Campagna to the statutorily-prescribed amount of $104,175.00 while denying the remainder of the parties' post-trial motions. Defendants noted an appeal to this Court from the trial court's final judgment and post-trial orders while Mr. Chisum noted a cross-appeal to this Court from the trial court's final judgment and certain preliminary and post-trial orders.

## II. Substantive Legal Analysis

### A. Standard of Review

¶ 31      This Court reviews a trial court's legal determinations, including its decisions to grant or deny motions to dismiss for failure to state a claim for which relief can be granted, *see Sykes v. Health Network Sols., Inc.*, 372 N.C. 326, 332 (2019), and the correctness of the trial court's instructions to the jury, *see Chappell v. N.C. Dep't of Transp.*, 374 N.C. 273, 281 (2020), using a de novo standard of review. The issue before a reviewing court in determining whether a motion for a directed verdict or judgment notwithstanding the verdict should have been allowed or denied focuses upon "whether the evidence, taken in the light most favorable to the non-moving party, is sufficient as a matter of law to be submitted to the jury." *Davis v. Dennis*

*Lilly Co.*, 330 N.C. 314, 322 (1991) (citation omitted). In view of the fact that trial court decisions to dissolve an LLC pursuant to N.C.G.S. § 57D-6-02 and to appoint a receiver pursuant to N.C.G.S. § 57D-6-04 (stating that a trial court "*may* appoint . . . a receiver . . . if dissolution is decreed by the court to wind up the LLC" (emphasis added)), are discretionary in nature, we review such determinations using an abuse of discretion standard of review. *See Campbell v. Church*, 298 N.C. 476, 483 (1979) (stating that "the use of 'may' generally connotes permissive or discretionary action and does not mandate or compel a particular act"); *Mitchell, Brewer, Richardson, Adams, Burge & Boughman, PLLC v. Brewer*, 209 N.C. App. 369, 392 (2011) (stating that "the issuance of . . . an order of [judicial] dissolution is within the trial court's discretion"). In the same vein, "[t]he trial judge has the discretionary power to set aside a verdict when, in his opinion, it would work injustice to let it stand"; "if no question of law or legal inference is involved in the motion, his action in so doing is not subject to review on appeal in the absence of a clear abuse of discretion." *Piazza v. Kirkbride*, 372 N.C. 137, 143 (2019) (quoting *Selph v. Seplh*, 267 N.C. 635, 637 (1996)). A ruling committed to the trial court's discretion will not be overturned for an abuse of discretion in the absence of "a showing that its ruling was manifestly unsupported by reason and could not have been the result of a reasoned decision." *Friday Invs., LLC v. Bally Total Fitness of the Mid-Atl., Inc.*, 370 N.C. 235, 241 (2017) (quoting *In re Foreclosure of Lucks*, 369 N.C. 222, 228 (2016)).

### B. Defendants' Appeal

#### 1. Accrual of the Statute of Limitations

¶ 32    As an initial matter, defendants contend that, as far as Mr. Chisum's declaratory judgment claims are concerned, the trial court erred by submitting to the jury the issue of when Mr. Chisum had notice of the Campagnas' breach of the operating agreements for Judges Road and Parkway. According to defendants, the trial court erred by submitting the issue of the date upon which Mr. Chisum had notice of the Campagnas' alleged breaches of the operating agreements to the jury on the grounds that the applicable statute of limitations began running at the moment of the breach regardless of the extent to which the injured party had notice that the breach had occurred. In defendants' view, the undisputed record evidence tended to show that any breaches of the operating agreements for Judges Road and Parkway that the Campagnas might have committed occurred outside of the three-year limitations period applicable to breach of contract-based declaratory judgment claims. In support of this contention, defendants direct our attention to Mr. Chisum's testimony that the Campagnas took control of Judges Road and Parkway in 2012 and sold Parkway's assets in January 2013 in violation of the applicable operating agreements and to Richard Campagna's testimony that, after he and Rocco Campagna had made a capital contribution to Judges Road in August 2012 following Mr. Chisum's refusal to do so, the Campagnas assumed total ownership and control

over both Judges Road and Parkway. In addition, defendants point to evidence that, as of 1 January 2013, Mr. Chisum had ceased making decisions for either LLC and was no longer receiving benefits as a member of either Judges Road or Parkway. As a result, defendants contend that Mr. Chisum's declaratory judgment claims involving Judges Road and Parkway were time-barred at the time that he filed his initial complaint in this case in July 2016.

¶ 33    In seeking to persuade us to reject defendants' contention, Mr. Chisum contends that established North Carolina law requires the existence of notice before the limitations period associated with a breach of contract claim begins to accrue and that an analysis of the record evidence demonstrates the existence of triable issues of fact with respect to the date upon which he had notice of the Campagnas' breaches of the Judges Road and Parkway operating agreements. Mr. Chisum claims that he cannot be said to have been on actual or constructive notice that a breach of the Judges Road and Parkway operating agreements had occurred given that the Campagnas had never amended the Schedule 1s associated with either entity to reflect the extinguishment of his ownership interests in light of Mr. MacDonald's testimony that the Schedule 1s provided the "definitive" statement of a member's interest in the LLCs and the fact that he had informed Mr. Chisum that he was a member to the extent shown on the Schedule 1s within three years of Mr. Chisum filing the complaint in this lawsuit. In addition, Mr. Chisum asserts that the

Campagnas continued to send him K-1s showing that he was a member of Judges Road and Parkway, "including [documents transmitted] within 3 years of when he filed the lawsuit." In the event that notice of breach is required before the applicable statute of limitations began to run, Mr. Chisum points out that "[defendants] do not argue that the evidence was insufficient in that event."

¶ 34        As a general proposition, "a statute of limitations should not begin running against [a] plaintiff until [the] plaintiff has knowledge that a wrong has been inflicted upon him." *Black v. Littlejohn*, 312 N.C. 626, 639 (1985). On the other hand, "as soon as the injury becomes apparent to the claimant or should reasonably become apparent, the cause of action is complete and the limitation period begins to run." *Pembee Mfg. Corp. v. Cape Fear Constr. Co., Inc.*, 313 N.C. 488, 493 (1985). The Court recognized the validity of this principle in the breach of contract context in *Christenbury Eye Center, P.A. v. Medflow, Inc.*, 370 N.C. 1 (2017), in which the parties had entered into an agreement requiring the defendants to provide the plaintiff with software improvements and the defendants failed to make a required royalty payment on 20 October 2000; failed to make another payment at any subsequent time; failed to provide written reports; and made prohibited sales—all of which were actions constituting a breach pursuant to the agreement. *Id*. at 3. Although the defendants remained in breach of the contract for the next decade, plaintiff did not file suit until 22 September 2014. *Id*. In affirming the trial court's decision to dismiss

the plaintiff's breach of contract claim on the grounds that it was time-barred, we noted that "North Carolina law has long recognized the principle that a party must timely bring an action *upon discovery* of an injury to avoid dismissal of the claim" and held that "[s]tatutes of limitations require the pursuit of claims to occur within a certain period *after discovery*." *Id*. at 2 (emphases added). As a result, given that the plaintiff "had notice of its injury as early as 20 November 1999," when the defendants did not submit their first monthly report, "and certainly by 20 October 2000, when [the] defendants failed to pay the first $500 minimum royalty payment," we held that, "[b]ecause [the] plaintiff had notice of its injury yet failed to assert its rights, all of [the] plaintiff's claims are time barred." *Id*. at 6–7.

¶ 35 We recognized the same principle in *Parsons v. Gunter*, 266 N.C. 731 (1966), in which the parties had agreed to jointly develop, patent, and sell cotton card drive machines and to divide any resulting profits. *Id*. at 731. After the machines became successful, the defendant independently formed a separate corporation to market the machines, began realizing large profits, and patented the machinery. *Id*. at 731–32. When the plaintiff demanded an accounting in May 1960, the defendant responded by saying that "there was not enough room for both of us in selling these card drives." *Id*. at 733. Over three years later, the plaintiff brought a breach of contract action against the defendant in reliance upon the parties' earlier agreement. *Id*. In upholding the trial court's determination that the plaintiff's action was time-barred,

we noted that the plaintiff had filed suit "[m]ore than three years . . . after [the] plaintiff *was put on notice of* [the defendant's] disavowal of any obligation to [the] plaintiff and the institution of this action." *Id*. at 734 (emphasis added).

¶ 36    Admittedly, a number of our prior decisions have been somewhat opaque in addressing the issue that is before us in this case. *See, e.g., Pearce v. N.C. State Hwy. Patrol Voluntary Pledge Comm.*, 310 N.C. 445 (1984); *Penley v. Penley*, 314 N.C. 1 (1985). However, the entire principle upon which defendants' argument hinges, which is that the statute of limitations begins to run against a plaintiff who has no way of knowing that the underlying breach has occurred, runs afoul of both our recent decisions, such as *Christenbury*, and basic notions of fairness. The evidence contained in the present record demonstrates that, even though the operating agreements specified the manner in which "all notices, demands and requests" were required to be given, Mr. MacDonald was unable to recall whether the 25 June 2012 letter that he sent to Mr. Chisum concerning Judges Road complied with the terms of the operating agreements, while Mr. Chisum testified that he never received the letter in question. In addition, even though Mr. Chisum's 2013 Parkway K-1 was dated 7 April 2014, Mr. Chisum testified that he did not receive it until October 2014 and that he first became aware that the Campagnas had attempted to extinguish his ownership interests in the LLCs in March 2016, when he unsuccessfully attempted to access his complimentary Judges Road storage unit. As a result, we affirm the

trial court's determination that the statute of limitations applicable to the declaratory judgment claims that Mr. Chisum asserted against defendants began running at the time that he became aware or should have become aware of the Campagnas' breaches of the operating agreements and that the record contained sufficient evidence that Mr. Chisum's declaratory judgment claims relating to Judges Road and Parkway were not time-barred to support the submission of the statute of limitations issue to the jury.

### 2. Necessity for Proof of Actual Damages

¶ 37        Secondly, defendants argue that the trial court erred by failing to direct a verdict or enter judgment notwithstanding the verdict in their favor with respect to the derivative claims for breach of fiduciary duty and constructive fraud relating to Judges Road. In support of this contention, defendants contend that the record contained no evidence that Judges Road had suffered actual damages, a deficiency that defendants believe to be fatal to Mr. Chisum's chances for success with respect to the relevant claims. In defendants' view, nominal damages, standing alone, are insufficient to support claims for constructive fraud and breach of fiduciary duty, with Mr. Chisum having failed to elicit any evidence that Judges Road had sustained any actual damages as a result of the Campagnas' conduct.

¶ 38        In response, Mr. Chisum begins by arguing that defendants did not properly preserve this contention for purposes of appellate review by failing to raise it at trial

and invited any error that the trial court might have committed by requesting the trial court to instruct the jury with respect to the breach of fiduciary duty and constructive fraud claims in such a manner as to permit the jury to find in Mr. Chisum's favor based upon an award of nothing more than nominal damages. In addition, Mr. Chisum contends that he did, in fact, offer evidence tending to show that Judges Road had sustained actual damages as the result of the Campagnas' conduct, including evidence which demonstrated that the Campagnas had made loans to themselves from the LLCs, sold essentially all of Judges Road's assets without either informing or obtaining consent from Mr. Chisum, and paid themselves large "management fees" from the LLCs despite their admission that they were "not supposed to get such fees." Finally, Mr. Chisum asserts that North Carolina law allows the assertion of breach of fiduciary duty and constructive fraud claims based upon nothing more than an award of nominal damages.

¶ 39          Although this Court has not previously addressed the issue of whether a plaintiff is required to prove actual damages in support of breach of fiduciary duty and constructive fraud claims, the Court of Appeals has addressed this issue on a number of occasions. In *Sloop v. London*, 27 N.C. App. 516 (1975), the plaintiffs sought to recover damages for wrongful foreclosure in reliance upon a breach of fiduciary duty theory. *Id*. at 518. After the trial court directed a verdict in favor of the defendants on the grounds that the record was devoid of any evidence tending to

show that a wrongful foreclosure had occurred or that the plaintiffs were entitled to recover actual damages from the defendants, the Court of Appeals reversed the trial court's decision on the grounds that, "regardless of proof of any actual damages, [the] plaintiffs would be entitled to at least nominal damages should the jury find there was a wrongful foreclosure." *Id.* (citing *Bowen v. Fid. Bank*, 209 N.C. 140 (1936); 5 Strong, N.C. Index 2d, Mortgages and Deeds of Trust, § 39, pp. 594–95).

¶ 40    Similarly, in *Mace v. Pyatt*, 203 N.C. App. 245 (2010), the plaintiff asserted claims for trespass, conversion, forgery, fraud, and damage to personal property; prevailed upon all of those claims before a jury; and was awarded compensatory and punitive damages. *Id.* at 250. On appeal, the defendant argued that, given the absence of evidence concerning the amount of compensatory damages that the plaintiff was entitled to recover, the jury should not have been allowed to consider whether either compensatory or punitive damages should be awarded. *Id.* at 253. Although the Court of Appeals vacated the jury's award on the grounds that the compensatory damages issue should not have been submitted to the jury, *id.* at 254–55, it recognized that the record contained evidence tending to show that the plaintiff had suffered nominal damages and upheld the jury's punitive damages award for that reason, *id.* at 255–57, stating that:

> [i]t is well established that merely nominal damages may
> support a substantial award of punitive damages. Once a
> cause of action is established, [a] plaintiff is entitled to
> recover, as a matter of law, nominal damages, which in

turn support an award of punitive damages. Nominal
damages need only be *recoverable* to support a punitive
damages award, and a finding of nominal damages by the
jury is not required where [a] plaintiff has sufficiently
proven the elements of her cause of action.

*Id*. at 255 (cleaned up). As a result of its determination that the plaintiff was entitled
to recover nominal damages, the Court of Appeals concluded that the jury's punitive
damages award should be upheld. *Id*. at 256–57.

¶ 41     The plaintiff in *Bogovich v. Embassy Club of Sedgefield, Inc*., 211 N.C. App. 1
(2011), asserted claims for breach of fiduciary duty, constructive fraud, and unfair
and deceptive trade practices against multiple defendants, including a husband and
wife. *Id*. at 2. After the trial court granted summary judgment in favor of the plaintiff
with respect to her constructive fraud and unfair and deceptive trade practices
claims, the jury found for the plaintiff with respect to her claim for breach of fiduciary
duty and awarded her $12,165.00 in compensatory damages against the couple,
$510,000.00 in punitive damages against the husband, and $1.00 in punitive damages
against the wife. *Id*. at 7. On appeal, the defendants challenged the trial court's
decision to grant summary judgment in favor of the plaintiff with respect to her
constructive fraud claim on the grounds that the plaintiff had failed to establish the
amount of compensatory damages to which she was entitled. *Id*. at 11. In rejecting
the defendants' argument, the Court of Appeals concluded that "the undisputed
evidence established the existence of all of the elements required for a finding of

liability for constructive fraud" and that, "[a]ccording to well-established law, once a cause of action [has been] established, [the] plaintiff is entitled to recover, as a matter of law, nominal damages." *Id.* at 12 (second alteration in original).

¶ 42        In *Collier v. Bryant*, 216 N.C. App. 419 (2011), the plaintiffs asserted claims for actual and constructive fraud. However, the trial court granted summary judgment in favor of the defendant with respect to those claims. *Id.* at 423. On appeal, the plaintiffs contended that the record reflected the existence of genuine issues of material fact relating to the damages issue, *id.* at 430, while the defendants asserted that the plaintiffs were not entitled to recover punitive damages on the grounds that the plaintiffs could not prove the elements of their underlying substantive claims, *id.* at 434. In rejecting the defendants' argument, the Court of Appeals held that punitive damages are "incidental damages to a cause of action" and "can be awarded if either actual or constructive fraud is shown." *Id.* In other words, the Court of Appeals held that, even though "nominal damages must be recoverable" in order to support a punitive damages award, "there is no requirement that nominal damages actually be recovered." *Id.*

¶ 43        Similarly, the plaintiff in *Harris v. Testar, Inc.*, 243 N.C. App. 33 (2015), asserted a wrongful termination claim while the defendants counterclaimed for fraud and breach of fiduciary duty. *Id.* at 36. The trial court granted summary judgment in favor of the defendants, who were awarded $1.00 in nominal damages. *Id.* at 36–

37.  On appeal, the plaintiff challenged the trial court's decision to grant summary judgment in favor of the defendants with respect to the breach of fiduciary duty counterclaim.  *Id.* at 37.  The Court of Appeals, however, concluded that the plaintiff had breached a fiduciary duty to the defendants and allowed the trial court's ruling to stand despite the fact that nothing more than nominal damages had been awarded to the defendants.  *Id.* at 38–39.

¶ 44        As a result of our belief that the Court of Appeals decisions discussed above were correctly decided, we adopt the reasoning of the Court of Appeals and hold that potential liability for nominal damages is sufficient to establish the validity of claims for breach of fiduciary duty and constructive fraud and can support an award of punitive damages.  Aside from the fact that nothing in the prior decisions of this Court indicates that proof of actual injury is necessary in order to support a claim for breach of fiduciary duty or constructive fraud, we see no basis for treating the incurrence of nominal damages as a second-class legal citizen in this context, particularly given that such damages do reflect the existence of a legal harm and the fact that the policy of North Carolina law is to discourage breaches of fiduciary duty and acts of constructive fraud.  As a result, we affirm the trial court's decision to enter judgment in Mr. Chisum's favor with respect to the claims for breach of fiduciary duty and constructive fraud relating to Judges Road, including its award of punitive damages.

### 3.  Inconsistent Verdicts

¶ 45        Thirdly, defendants contend that the trial court erred by allowing the jury to find Rocco Campagna liable for constructive fraud given that it failed to find him liable for breach of fiduciary duty.  According to defendants, given that the existence of a breach of fiduciary duty is an element of a constructive fraud claim, the jury could not rationally have found Rocco Campagna liable for constructive fraud once it failed to find that he had breached a fiduciary duty.  In other words, defendants claim that, having found that Rocco Campagna was not liable for breach of fiduciary duty, it was precluded from finding him liable on a constructive fraud theory.

¶ 46        Mr. Chisum, on the other hand, contends that the trial court correctly determined that the jury's verdicts were not fatally inconsistent given that the jury was instructed to evaluate Rocco Campagna's conduct over two different periods of time in determining whether he should be held liable for breach of fiduciary duty and constructive fraud, with a ten-year period of time being applicable to the constructive fraud claim and a three-year period of time being applicable to the breach of fiduciary duty claim.  In addition, Mr. Chisum asserts that defendants have failed to cite any authority in support of their argument that the jury's verdicts with respect to the relevant claims are fatally inconsistent.

¶ 47        The Court of Appeals has explicitly held that, "[a]lthough the elements of [constructive fraud and breach of fiduciary duty] overlap, each is a separate claim under North Carolina law." *White v. Consol. Plan., Inc.*, 166 N.C. App. 283, 293 (2004)

(citing *Governor's Club, Inc. v. Governors Club Ltd. P'ship*, 152 N.C. App. 240, 249 (2002), *aff'd per curiam*, 357 N.C. 46 (2003)). This Court has implicitly endorsed the logic inherent in the Court of Appeals' treatment of this question, having allowed plaintiffs to assert claims for both breach of fiduciary duty and constructive fraud in the same case. *See, e.g.*, *Orlando Residence, Ltd. v. All. Hosp. Mgmt., LLC*, 375 N.C. 140 (2020) (involving separate claims for breach of fiduciary duty and constructive fraud).

¶ 48        A successful claim for breach of fiduciary duty requires proof that "(1) the defendants owed the plaintiff a fiduciary duty; (2) the defendant breached that fiduciary duty; and (3) the breach of fiduciary duty was a proximate cause of injury to the plaintiff." *Sykes*, 372 N.C. at 339. A successful claim for constructive fraud requires proof of facts and circumstances "(1) which created the relation of trust and confidence [between the parties], and (2) [which] led up to and surrounded the consummation of the transaction in which defendant is alleged to have taken advantage of his position of trust to the hurt of plaintiff." *Terry v. Terry*, 302 N.C. 77, 83 (1981) (second alteration in original) (quoting *Rhodes v. Jones*, 232 N.C. 547, 548–49 (1950)). Although the statute of limitations applicable to breach of fiduciary duty claims is three years, N.C.G.S. § 1-52(1) (2019), the limitations period applicable to constructive fraud claims is ten years, N.C.G.S. § 1-56(a) (2019).

¶ 49        In rejecting defendants' challenge to the consistency of the jury's verdicts with

respect to these claims, the trial court pointed out that:

> [t]he jury was permitted to consider Rocco's conduct for the
> 10 years preceding January 6, 2017, in deciding whether
> he had committed constructive fraud, but for only 3 years
> preceding January 6, 2017, for the claim of breach of
> fiduciary duty.  [Mr. Chisum] presented detailed,
> voluminous evidence regarding Judges Road financial
> transactions from 2010 through 2017.  The jury could have
> concluded that Rocco engaged in acts in breach of the trust
> and confidence he owed Judges Road for which he should
> be held liable that occurred prior to, but not after, January
> 6, 2014.

After carefully reviewing the record, we agree with the trial court that the jury's

verdicts with respect to the breach of fiduciary duty and constructive fraud claims

are not fundamentally inconsistent in light of the differing statutes of limitation

applicable to those claims.  Simply put, the jury's determination that Rocco

Campagna engaged in tortious conduct prior to 2014 has no bearing upon the issue

of whether he engaged in tortious conduct between 2014 and 2017.  As a result, we

affirm the trial court's determination that the jury did not act in an impermissibly

inconsistent manner when it found Rocco Campagna liable for constructive fraud

while declining to find him liable for breach of fiduciary duty.

### 4. Instruction Concerning Open, Fair, and Honest Conduct

¶ 50        Next, defendants contend that the trial court erred by declining to instruct the

jury concerning the effect of evidence tending to show that they acted openly, fairly,

and honestly in their dealings with Judges Road and Parkway upon the viability of Mr. Chisum's constructive fraud claim. Defendants assert that, if the trial court had delivered the requested instruction, the jury would have found that the presumption of constructive fraud had been rebutted, so that Mr. Chisum would have been required to prove actual fraud and would not have been able to do so. In defendants' view, the record contained evidence tending to show that both Mr. Chisum and the LLCs sought and relied upon independent advice in connection with their dealings with the Campagnas, with this evidence being sufficient to support the delivery of the requested instruction. In addition, defendants contend that the trial court erroneously informed the jury that the principal issue that it was required to consider in addressing this claim was whether the Campagnas had been open, fair, and honest in their dealings with Mr. Chisum rather than in their dealings with the LLC, so that the trial court's instructions shifted their fiduciary obligations "away from the party to whom the fiduciary duty is actually owed" to a third person.

¶ 51     In response, Mr. Chisum argues that the trial court had correctly recognized that defendants had failed to elicit evidence tending to show that Mr. Chisum or the LLCs relied upon independent advice in the course of Mr. Chisum's dealings with the Campagnas and the LLCs. In addition, Mr. Chisum points to the presence of evidence tending to show that the Campagnas had exclusive control over the LLCs and relied upon the LLCs' lawyer and accountant to do their bidding, while ignoring the advice

provided by the Companies' attorney that Mr. Chisum remained a member of the LLCs to the extent shown on the Schedule 1s, with these facts serving to defeat defendants' assertion that they had acted in an open, fair, and honest manner. Mr. Chisum also asserts that the trial court's focus upon whether the Campagnas had acted openly, fairly, and honestly in their dealings with him as an individual was proper given that the underlying issue at trial was the propriety of the elimination of Mr. Chisum's individual interests in the LLCs. Finally, Mr. Chisum contends that defendants cannot show prejudice from the trial court's failure to deliver the requested instruction.

¶ 52     "It is a well-established principle in this jurisdiction that in reviewing jury instructions for error, they must be considered and reviewed in their entirety." *Desmond v. News & Observer Publ' Co.*, 375 N.C. 21, 66 (2020), *reh'g denied*, 848 S.E.2d 486 (N.C. 2020) (quoting *Murrow v. Daniels*, 321 N.C. 494, 497 (1988)). In evaluating the validity of a party's challenge to the trial court's failure to deliver a particular jury instruction, "we consider whether the instruction requested is correct as a statement of law and, if so, whether the requested instruction is supported by the evidence." *Minor v. Minor*, 366 N.C. 526, 531 (2013).

¶ 53     In *Forbis v. Neal*, 361 N.C. 519 (2007), the plaintiff brought an action on behalf of the estates of her two aunts against the aunts' nephew based upon certain transactions in which the nephew had engaged in reliance upon his authority as the

aunts' attorney in fact. *Id.* at 521. After the trial court granted summary judgment in the nephew's favor, *id.* at 523, this Court held, in connection with the plaintiff's constructive fraud claim, that, "[w]hen, as here, the superior party obtains a possible benefit through the alleged abuse of the confidential or fiduciary relationship, the aggrieved party is entitled to a presumption that constructive fraud occurred," *id.* at 529 (citation omitted), with this presumption arising "not so much because the fiduciary has committed a fraud, but because he may have done so," *id.* (cleaned up). After noting that the nephew was entitled to rebut the presumption of fraud "by showing, for example, that the confidence reposed in him was not abused," *id.* (cleaned up), we noted that the nephew had failed to make a sufficient showing to successfully rebut the presumption, *id.* at 530. We have also held that, once rebutted, the presumption of fraud "evaporates, and the accusing party must shoulder the burden of producing actual evidence of fraud." *Watts v. Cumberland Cnty. Hosp. Sys., Inc.*, 317 N.C. 110, 116 (1986).

¶ 54        Although the jury instruction that the Campagnas requested the trial court to deliver is couched in the language of the pattern jury instructions, that fact is not determinative of the issue that we are required to resolve in this case. *Desmond*, 375 N.C. at 70 (concluding that the pattern jury instructions did not accurately state the applicable law). The instruction that the Campagnas requested the trial court to deliver with respect to Judges Road—which is identical to the instruction that they

requested relating to Parkway—did not include the burden-shifting language that is found in our decisions with respect to this issue. Instead, the ultimate import of the instruction that defendants requested the trial court to deliver to the jury in this case stated that, if the jury found that the Campagnas had acted openly, fairly, and honestly in their dealings with him, Mr. Chisum would be completely barred from obtaining a recovery on the basis of his constructive fraud claim. In view of the fact that the requested instruction did not inform the jury that, if the Campagnas had managed to rebut the presumption of fraud, Mr. Chisum would still be entitled to a recovery in the event that the jury found that actual fraud had occurred, it did not accurately state the applicable law. As a result, the trial court did not err by failing to instruct the jury concerning the manner in which it should consider evidence tending to show that the Campagnas acted in an open, fair, and honest manner in accordance with defendants' requested instruction.

### 5. Identical Compensatory Damage Awards

Next, defendants argue that the jury's decision to award $128,757.00 in compensatory damages to Parkway against each of the Campagnas created an impermissible ambiguity in the jury's verdict. In support of this contention, defendants note that Mr. Chisum's trial counsel suggested in his closing argument to the jury that the jury could award the same amount of compensatory damages against each defendant with the assurance that the trial court would ensure that no double

recovery occurred. In light of this statement, defendants contend that a reviewing court cannot be certain whether the jury intended to award identical amounts to Parkway against each defendant or if it believed that the trial court would split a single award of $128,757.00 in favor of Parkway between Richard Campagna and Rocco Campagna. Although defendants acknowledge that they failed to lodge a contemporaneous objection to this portion of Mr. Chisum's jury argument, they contend that this omission has no bearing upon the proper resolution of their challenge to the compensatory damages award relating to Parkway because the resulting ambiguity did not become apparent until the jury had rendered its verdict.

¶ 56    In response, Mr. Chisum notes that defendants did not object to the statements that his trial counsel made during his closing argument and have not challenged the trial court's determination that the record contained sufficient evidence to support a total compensatory damage award in favor of Parkway in the amount of $257,514.00. In light of that set of circumstances, Mr. Chisum argues that the trial court did not abuse its discretion by refusing to disturb the jury's compensatory damages verdict.

¶ 57    A verdict "should be certain and import a definite meaning free from ambiguity," *Gibson v. Cent. Mfrs. Mut. Ins. Co.*, 232 N.C. 712, 716 (1950), with an uncertain or ambiguous verdict being insufficient to support the entry of a judgment, *id.* at 715. As a general proposition, reviewing courts presume that the jury has followed the trial court's instructions. *See Smith v. Perdue*, 258 N.C. 686, 690 (1963).

For that reason, we have held jury verdicts to be fatally ambiguous in the event that the verdict sheet or the underlying instructions were vague, making it unclear precisely what the jury intended by its verdict. *See State v. Lyons*, 330 N.C. 298, 309 (1991); *State v. McLamb*, 313 N.C. 572, 577 (1985). However, defendants' argument does not focus upon any alleged deficiency in the trial court's instructions and rests, instead, upon a statement made by Mr. Chisum's trial counsel during closing arguments.

¶ 58         As a result of the fact that this Court has never had an opportunity to directly address the validity of identical compensatory damage verdicts returned against different defendants, defendants have directed our attention to *City of Richmond, Virginia v. Madison Management Group, Inc.*, 918 F.2d 438 (4th Cir. 1990), and *ClearOne Communications, Inc. v. Biamp Systems*, 653 F.3d 1163 (10th Cir. 2011), in which defendants contend that similar verdicts were held to be impermissibly ambiguous. The decisions upon which defendants rely are, however, distinguishable from this case given that the defendants in those cases were treated as being jointly and severally liable, making it unclear whether the juries intended to apportion total damages between the defendants or to require the defendants to pay the same damage amount jointly and severally. *See City of Richmond*, 918 F.2d at 460–61; *ClearOne*, 653 F.3d at 1179. In view of the fact that the Campagnas have not been

held to be jointly and severally liable in this case, the rationale upon which the decisions relied upon by defendants is based has no application in this case.

¶ 59      A careful review of the record shows that the jury was clearly instructed to award the damages that Parkway sustained as a proximate result of the fact that both Richard Campagna and Rocco Campagna took "advantage of a position of trust and confidence to bring about the transfer of money and real property from Parkway to himself or his other companies." At trial, Mr. Chisum elicited evidence tending to show "lost profits, loans and transfers of funds by the Campagnas to themselves, and losses associated with the sales of Parkway's assets." According to the trial court, the combined compensatory damages award to Parkway was "well within the range of compensatory damages sought for Parkway." Moreover, the verdict sheet and the trial court's instructions in this case did not contain any language that could reasonably have been expected to confuse the jury as to the effect of any damage award that it intended to make, so we have no basis for believing that the jury failed to act in accordance with the trial court's instructions regardless of any statements that might have been made by Mr. Chisum's trial counsel during the closing arguments to the jury. As a result, we hold that the trial court did not abuse its discretion by refraining from deciding that the jury's compensatory damages verdict with respect to Parkway was impermissibly ambiguous.

### 6. Judicial Dissolution and Appointment of Receiver

¶ 60        Finally, defendants argue that the trial court erred by judicially dissolving Judges Road and Parkway and appointing a receiver to handle the operation and dissolution of the two LLCs.  As an initial matter, defendants contend that the trial court failed to make findings of fact and conclusions of law in support of its determination that the dissolution of Judges Road and Parkway was necessary.  In addition, defendants claim, in reliance upon testimony from Mr. Chisum that he continued to consider the Campagnas to be his "good friends," that their working relationship with one another was "good," and that they all "got along very well," that the record did not support the trial court's decision to dissolve the two LLCs. Moreover, defendants assert that they were deprived of their statutory right to purchase Mr. Chisum's interests in lieu of dissolution.  Similarly, defendants contend that they were statutorily entitled to notice and an opportunity to be heard prior to the entry of an order judicially dissolving Judges Road and Parkway, with the trial itself being insufficient to serve as the required hearing given that the issue of whether the LLCs should be judicially dissolved was not at issue between the parties during the trial.  In the same vein, defendants assert that, given Mr. Chisum's failure to seek judicial dissolution of Judges Road and Parkway pursuant to clause (i) of N.C.G.S. § 57D-6-02(2) in his amended complaint, they had not received notice concerning the exact nature of the judicial dissolution claim that Mr. Chisum was

asserting as required by N.C.G.S. § 1A-1, Rule 8. Finally, defendants argue that the trial court failed to provide them with notice and an opportunity to be heard before appointing a receiver as required by N.C.G.S. § 57D-6-04.

Mr. Chisum has responded to defendants' arguments by asserting that the trial court did make sufficient findings to support the entry of an order of judicial dissolution and that there was ample support in the record evidence for such a decision. In addition, Mr. Chisum claims that the Campagnas were not entitled to purchase his interests in Judges Road and Parkway in lieu of judicial dissolution given that such a "buy-out" opportunity is only available when judicial dissolution is ordered pursuant to clause (ii) of the applicable statute while the trial court predicated its decision to judicially dissolve Judges Road and Parkway upon clause (i). Finally, Mr. Chisum contends that the trial and related proceedings provided defendants with ample notice and an opportunity to be heard with respect to both the judicial dissolution of Judges Road and Parkway and the appointment of a receiver.

According to N.C.G.S. § 57D-6-02(2),

> [t]he superior court may dissolve an LLC in a proceeding brought by . . . [a] member, if it is established that (i) it is not practicable to conduct the LLC's business in conformance with the operating agreement and this Chapter or (ii) liquidation of the LLC is necessary to protect the rights and interests of the member.

N.C.G.S. § 57D-6-02(2) (2019). The rights available to the members of a judicially dissolved LLC vary depending upon the basis upon which the trial court decides that

judicial dissolution should be required. In the event that a trial court determines that an LLC should be judicially dissolved pursuant to clause (ii), "the court will not order dissolution if after the court's decision the LLC or one or more other members elect to purchase the ownership interest of the complaining member at its fair value in accordance with any procedures the court may provide." N.C.G.S. § 57D-6-03(d) (2019). Similarly, trial courts have the authority to appoint a receiver for an LLC on the condition that "the court shall hold a hearing on the subject after delivering notice, or causing the party who brought the dissolution to deliver notice, of the hearing to all parties and any other interested persons designated by the court." N.C.G.S. § 57D-6-04(a) (2019).

In his amended complaint, Mr. Chisum alleged, in pertinent part, that:

> 160. Defendants [Rocco] Campagna and [Richard] Campagna unilaterally determined that Dennis Chisum was no longer an owner or member of the Chisum/Campagna LLCs and began operating the companies in their own best interests, to the detriment of Dennis Chisum's interests.
>
> 161. Upon information and belief, [Rocco] Campagna and [Richard] Campagna have directed distributions to themselves without notifying Dennis Chisum or distributing money to him in accordance with his ownership interest.
>
> 162. Based on the Campagnas' conduct as set forth herein, liquidation of each of the Chisum/Campagna LLCs is necessary to protect the rights and interests of Dennis Chisum.

163. In accordance with N.C.G.S. §§ 57D-6-02 and 57D-6-02, [Mr. Chisum] requests that this Court dissolve and liquidate each of the Chisum/Campagna LLCs and distribute the proceeds in accordance with their respective ownership interests.

A careful examination of these allegations compels the conclusion that Mr. Chisum sought the judicial dissolution of Judges Road and Parkway pursuant to both clauses of N.C.G.S. § 57D-6-02(2) by virtue of the fact that these factual allegations would support a determination that it was no longer practicable to operate the LLCs in accordance with the existing operating agreements and that judicial dissolution was necessary to protect Mr. Chisum's interests, so that defendants had ample notice that the trial court was entitled to dissolve the two LLCs on the basis of either prong of the relevant statutory provision.

¶ 64 In deciding that Judges Road and Parkway should be judicially dissolved, the trial court found as fact that:

> a. The Campagnas and [Mr. Chisum] had no direct contact or communications with one another from approximately October of 2010, when [Mr. Chisum] walked out of the [Carolina Coast] members meeting, and the filing of this lawsuit in July 2016.
>
> b. The Campagnas treated [Mr.] Chisum as if his membership interests in Parkway and Judges Road had been extinguished beginning in July 2012, but never communicated to [Mr. Chisum] that they considered his memberships terminated. Richard Campagna admitted [Mr. Chisum] did not fail to meet a capital call or take any specific action which would

have terminated [Mr. Chisum's] membership in Parkway.

c. The Campagnas filed documents with the Secretary of State of North Carolina representing that Parkway was dissolved without notifying [Mr. Chisum], seeking his consent, or making any distribution to [Mr. Chisum].

d. The Campagnas ceased providing [Mr. Chisum] with required report and financial information regarding Parkway and Judges Road.

e. [Mr. Chisum]'s wife, Blanche, testified that she attempted to visit the Campagnas' offices sometime in 2012–2013 to get information regarding the LLCs, but that Richard ordered her to leave the premises in a threatening manner.

In addition, in denying defendants' post-trial motions relating to the judicial dissolution of Judges Road and Parkway, the trial court stated that:

> [i]n addition to this evidence, the Court also has had opportunity to observe the parties during the course of this litigation and at trial. The level of acrimony and distrust between the Campagnas and [Mr. Chisum] is extraordinary. Following this lengthy and highly contentious lawsuit, the Court is convinced that these parties could not ever again be associated with one another in a jointly owned business, let alone conduct the business of Parkway and Judges Road.

As a result, the trial court's factual findings and the evidence received at trial provide ample support for a determination that "it is not practicable to conduct the LLC[s'] business in conformance with the operating agreement and this Chapter." N.C.G.S. § 57D-6-02(2). As a result, we hold that the trial court properly ordered the judicial

dissolution of Judges Road and Parkway pursuant to clause (i) of N.C.G.S. § 57D-6-02(2) without giving the Campagnas the opportunity to purchase Mr. Chisum's interests given that they were not entitled to do so. *See* N.C.G.S. § 57D-6-03(d).

¶ 65     In addition, we hold that defendants had an ample opportunity to be heard with respect to the issue of whether Judges Road and Parkway should be judicially dissolved. In view of the allegations of the amended complaint, the interrelationship of the other issues that were before the trial court in this case, and the extent to which evidence relevant to the judicial dissolution was received during the course of the trial, we have no hesitation in concluding that the extent to which Judges Road and Parkway should be judicially dissolved and whether a receiver should be appointed to oversee the operation and dissolution of those companies were issues before the court at trial. At trial, the trial court heard extensive evidence concerning the level of animosity between the parties and the likelihood that they would ever be able to work together as required by the operating agreements. In addition, the trial court informed the parties while the jury was deliberating that "it's likely I will order dissolution here. I mean, highly likely, given the circumstances of the existing Judges Road" and that it typically "appoint[s] a receiver" in such circumstances. As a result, for all of these reasons, we hold that the trial court did not err when it ordered that Judges Road and Parkway be judicially dissolved and that a receiver be appointed to oversee the operation and dissolution of those LLCs.

### C. Mr. Chisum's Appeal

#### 1. Timeliness of Carolina Coast-Related Claims

¶ 66       In seeking relief from the trial court's judgments and orders before this Court, Mr. Chisum begins by arguing that the trial court erred by determining that his claims relating to Carolina Coast were barred by the applicable statute of limitations. More specifically, Mr. Chisum contends that statutes of limitation do not apply to actions for a declaratory judgment given that nothing is required to support the maintenance of such actions except the existence of an actual controversy between the parties, with the only time-related bar applicable to declaratory judgment actions being the equitable doctrine of laches. In addition, Mr. Chisum asserts that, in the event that this Court concludes that declaratory judgment claims are subject to any statute of limitation, such actions should be governed by the ten-year limitations period for actions sounding in constructive fraud rather than the three-year limitations period for actions sounding in breach of contract given that his declaratory judgment claims rest upon the constructive fraud claim asserted in his amended complaint.

¶ 67       In addition, Mr. Chisum asserts that his claims involving Carolina Coast should be deemed to have been timely filed even if the applicable statute of limitations is the three-year period governing breach of contract actions, with this result being the appropriate one given that the Campagnas never amended Carolina

Coast's Schedule 1. At an absolute minimum, Mr. Chisum argues that the record reveals the existence of triable issues of fact relating to whether the operating agreement had been breached and whether or upon what date Mr. Chisum learned of any such breach that were sufficient to preclude the trial court from directing a verdict in defendants' favor with respect to his Carolina Coast-related claims. Finally, Mr. Chisum requests that, in the event that his claims relating to Carolina Coast are remanded to the Superior Court, New Hanover County, for a new trial, the trial court be directed to instruct the jury concerning the doctrine of equitable estoppel given the existence of evidence tending to show that the Campagnas acted in such a manner as to induce him to refrain from taking action to protect his interests prior to the filing of the initial complaint.

In response, defendants assert that the applicable statute of limitations is the three-year period applicable to a breach of contract claim, with the relevant limitations period having begun to run at the time of breach regardless of the extent, if any, to which Mr. Chisum had notice that a breach had actually occurred. In addition, defendants argue that the Campagnas did not act in a secretive manner in taking control of Carolina Coast and that Mr. Chisum had ample notice of their alleged breaches of contract more than three years prior to the filing of the original complaint.

¶ 69    This Court has "long recognized that a party must initiate an action within a certain statutorily prescribed period after discovering its injury to avoid dismissal of a claim," *Christenbury Eye Ctr., P.A.*, 370 N.C. at 5, and that statutes of limitation exist to "afford security against stale demands, not to deprive anyone of his just rights by lapse of time," *id*. at 5–6 (quoting *Shearin v. Lloyd*, 246 N.C. 363, 371 (1957), *superseded by statute*, N.C.G.S. § 1-15(b) (1971), *on other grounds as recognized in Black v. Littlejohn*, 312 N.C. 626, 630–31 (1985)).   Although the General Assembly has not enacted a specific statute of limitations applicable to declaratory judgment claims, this Court has applied statutes of limitation to declaratory judgment claims in a number of earlier cases.

¶ 70    In *Penley v. Penley*, 314 N.C. 1 (1985), for example, a husband filed an action against his wife for the purpose of seeking a declaration that he was entitled to a 48% ownership interest in a fast-food business.  *Id*. at 4.  The plaintiff alleged that, in exchange for his full-time assistance in operating the business during a time when the defendant was ill, she had agreed to organize the business as a joint enterprise with equally divided returns.  *Id*. at 5.  The plaintiff further alleged that, in 1977, the parties orally formed a corporation in which each party would own a 48% interest while their son owned the remaining 4%.  *Id*.  Both parties served as officers and directors of the corporation from late 1977 through 9 April 1979, at which point the defendant abandoned the plaintiff.  *Id*.  After a brief reconciliation, the defendant

abandoned the plaintiff for a second time on 31 December 1979 and, from that point on, denied that the plaintiff possessed any rights in the business and wrongfully converted the proceeds of the business to her own use. *Id.* On 11 August 1981, the plaintiff filed a complaint seeking a declaration that he was entitled to a 48% interest in the corporation, a claim that the jury upheld at trial. *Id.* at 4. On appeal, this Court concluded that "the three-year contract limitations period provided in [N.C.G.S. §] 1-52(1) is the applicable statute of limitations," *id.* at 19, and determined that "the breach occurred and the right to institute an action commenced, at the earliest, when [the] defendant broke her promise or took action inconsistent with the promise she made to [the plaintiff]," *id.* at 20. As a result, we held that, since the breach of contract occurred when the defendant initially failed to perform in accordance with the contract by abandoning the plaintiff in April 1979, the plaintiff's declaratory judgment claim was not barred by the applicable three-year limitations period. *Id.* at 19–21.

¶ 71        In *Williams v. Blue Cross Blue Shield of North Carolina*, 357 N.C. 170 (2003), we considered issues arising from the General Assembly's decision to enact legislation authorizing Orange County to enact a civil rights ordinance. *Id.* at 174–75. Acting in reliance upon this legislation, as amended, the Orange County Board of Commissioners adopted an anti-discrimination ordinance that was to be enforced by the Orange County Human Relations Commission. *Id.* at 176. In response to a civil

action filed by the plaintiff alleging that the defendant had discriminated against her on the basis of her age and sex, forced her to resign, and retaliated against her for filing a complaint, the defendant asserted a counterclaim in which it sought a declaration that the enabling legislation and the underlying ordinance violated the North Carolina Constitution. *Id*. at 176–77. On appeal from a trial court decision that the defendant's claim was not time-barred and that the enabling legislation violated the North Carolina Constitution, this Court concluded that the defendant's declaratory judgment action was not barred by the statute of limitations given that the defendant had not been harmed by the enactment of the enabling legislation or the adoption of the underlying ordinance until enforcement action had been taken against it, a set of circumstances that had occurred "well within any limitations period triggered by the suits and proceedings brought against it." *Id*. at 179–81.

¶ 72     In *Quality Built Homes Inc. v. Town of Carthage*, 369 N.C. 15 (2016), the plaintiffs brought a declaratory judgment action for the purpose of obtaining a determination concerning whether the Town had the authority to enact and enforce an ordinance regulating the collection of water and sewer impact fees that were intended to facilitate the provision of service to future customers. *Id*. at 16. On appeal from a trial court order granting summary judgment in favor of the Town, this Court held that the Town lacked the statutory authority to impose and collect fees relating to service to be provided in the future and remanded the case to the Court of

Appeals for a determination concerning whether the plaintiffs' claims were barred by the applicable statute of limitations. *Id.* at 20. In the course of deciding a subsequent appeal, we identified the applicable limitations period by focusing upon the nature of the underlying substantive claim to which the request for a declaratory judgment related and concluded that certain of the plaintiffs' claims were time-barred by the three-year statute of limitations applicable to claims arising under state or federal statutes. *Quality Built Homes Inc. v. Town of Carthage*, 371 N.C. 60, 73 (2018) (*Quality Built Homes II*).

¶ 73 Finally, in *North Carolina Farm Bureau Mutual Insurance Company v. Hull*, 370 N.C. 486 (2018), we reversed a decision of the Court of Appeals for the reasons stated in a dissenting opinion which would have held that a declaratory judgment action in a subrogation-related action had been timely filed within the three-year limitation period applicable to breach of contract actions. *See N.C. Farm Bureau Mut. Ins. Co. v. Hull*, 251 N.C. App. 429, 435 (2016) (Tyson, J., concurring in part and dissenting in part). In *Hull*, as in *Penley*, *Williams*, and *Quality Built Homes*, we affirmed the applicability of statutes of limitations to declaratory judgment actions, with the appliable statute of limitations being the one associated with the substantive claim that most closely approximates the basis for the relevant request for a declaration. *See Penley*, 314 N.C. at 20–21 (applying the three-year statute of limitations applicable to actions for breach of contract given that the case in question

revolved around an alleged breach of contract); *Quality Built Homes II*, 371 N.C. at 72–73 (applying the three-year statute of limitations applicable to claims based upon a "liability created by statute" given that the plaintiffs sought a declaration concerning the extent to which the Town's decision to assess certain fees relating to future service rested upon sufficient statutory authority); *Hull*, 370 N.C. at 486 (endorsing the conclusion set out in the dissenting opinion at the Court of Appeals that the three-year statute of limitations applicable to breach of contract actions governed an action seeking a declaration concerning the extent of a parties' subrogation rights under a policy of insurance). In the event that we believed that statutes of limitation did not apply to declaratory judgment actions, we would not have made any of these decisions. Moreover, we do not believe that the General Assembly intended to exempt declaratory judgment actions from the reach of any statute of limitations whatsoever given that such a decision might have the effect of thwarting the enforcement of the limitation of actions provisions that pervade the General Statutes of North Carolina by allowing plaintiffs to recast otherwise time-barred claims as declaratory judgment actions. As a result, we hold that declaratory judgment actions are subject to the applicable statute of limitations, which is the one that governs the substantive right that is most closely associated with the declaration that is being sought.

¶ 74    Although Mr. Chisum has, in fact, asserted a constructive fraud claim in connection with defendants' actions in interfering with his interest in Carolina Coast, he lacks the ability to assert that claim unless he is able to establish his status as a member of that LLC. The extent to which Mr. Chisum is a member of Carolina Coast hinges, in turn, upon the contents of the operating agreement associated with that entity, which is, of course, a contract. As a result, given that the validity of Mr. Chisum's claims relating to Carolina Coast ultimately hinges upon the validity of his claim that defendants breached the operating agreement by diluting his membership interest in the LLC and assuming total control of its operations, we hold that the three-year statute of limitations applicable to contract claims governs the declaratory judgment claims at issue in this case.

¶ 75    Finally, consistent with our earlier decision that a claim for breach of contract accrues when the plaintiff knew or should have known that the contract had been breached, we hold that the trial court erred by directing a verdict in favor of defendants with respect to Mr. Chisum's Carolina Coast-related claims. Although the record does, to be sure, contain ample evidence tending to show that Mr. Chisum knew or should have known of the Campagnas' breach of the operating agreement more than three years prior to the filing of the initial complaint, including the fact that Mr. Chisum's 2010 K-1 had been marked "[f]inal," we believe that the record also contains evidence that would have permitted a reasonable jury to return a verdict in

Mr. Chisum's favor with respect to this issue, including, but not limited to, the fact that the record contains evidence tending to show that an individual's membership status relating to Coastal Carolina is reflected in the contents of the Schedule 1 applicable to that LLC, and the fact that the Schedule 1 relating to Carolina Coast was never amended to show that Mr. Chisum's membership status had been fully diluted and the fact that Mr. Chisum was allowed to use his complimentary storage unit at Judges Road until February 2016. Thus, the trial court erred by directing a verdict in defendants' favor with respect to Mr. Chisum's Carolina Coast-related claims.

As a result, given our determination that the record reveals the existence of a triable issue of fact relating to the extent to which Mr. Chisum knew or reasonably should have known that defendants had breached the Carolina Coast operating agreement more than three years prior to the filing of the initial complaint, we reverse the trial court's decision to direct a verdict in defendants' favor with respect to this issue and remand this case to the Superior Court, New Hanover County, for a new trial with respect to the issue of whether Mr. Chisum's Carolina Coast-related claims are barred by the applicable statute of limitations. On remand, Mr. Chisum is free to attempt to persuade the trial court to deliver an equitable estoppel instruction to the jury if he wishes to do so. In the event that the jury determines on remand that Mr. Chisum's initial complaint had been filed within three years after

he knew or reasonably should have known that defendants had breached the Carolina Coast operating agreement and in the event that Mr. Chisum establishes on remand that he remains a member of Carolina Coast, he is also entitled to assert his breach of fiduciary duty and constructive fraud claims against defendants, subject to his ability to show that those claims are not otherwise time-barred and have substantive merit.

## 2. Punitive Damages Awards

Secondly, Mr. Chisum argues that, since the Campagnas own a majority of the interests in Judges Road and Parkway, they are otherwise entitled to receive pro rata distributions that include monies associated with punitive damages awards that they are required to pay to Judges Road and Parkway at the time that the LLCs are judicially dissolved. In Mr. Chisum's view, this Court should not countenance what he believes to be an inequitable result, particularly given that such a result would thwart North Carolina's policy of "punish[ing] a defendant for egregiously wrongful acts and . . . deter[ring] the defendant and others from committing similar wrongful acts," quoting N.C.G.S. § 1D-1 (2019). In addition, Mr. Chisum asserts that the principles underlying North Carolina's policy precluding tortfeasors from being enriched as a result of their own wrongs in the wrongful death context should provide guidance to the Court in resolving this issue as well and directs our attention to four decisions from other jurisdictions that, in his opinion, hold that punitive damages

awarded in corporate derivative actions should not be included in disbursements that are ultimately made for the benefit of wrongdoers. Finally, Mr. Chisum contends that, since he is not requesting that the jury's verdict be altered, the necessary relief can be afforded by simply amending the existing judgment to reflect that any distribution that is eventually made to the Campagnas following the judicial dissolution of Judges Road and Parkway should be calculated by excluding the effect of the punitive damages awards that they are otherwise required to pay to the LLCs.

¶ 78        In seeking to persuade us to refrain from adopting this proposal, defendants note that Mr. Chisum has failed to cite any binding or persuasive authority that fully supports his argument. In defendants' view, the jury was adequately informed that any punitive damages awards that it elected to order would be paid to the LLCs and that the Campagnas owned interests in Judges Road and Parkway at the time that the jury rendered its verdict with respect to the punitive damages issue. Finally, defendants assert that Mr. Chisum's analogy to the wrongful death claims is a faulty one given that in such cases, unlike the situation at issue in this case, the actual wrongdoer is a real party in interest in the underlying litigation.

¶ 79        According to well-established North Carolina law, a party is not entitled to advance an argument for the first time on appeal. *See Higgins v. Simmons*, 324 N.C. 100, 103 (1989). Instead, a party seeking to advance a legal claim on appeal "must have presented to the trial court a timely request, objection, or motion, stating the

specific grounds for the ruling the party desired the court to make if the specific grounds were not apparent from the context." N.C.R. App. P. 10(a)(1). In addition, "[a] party may not make any portion of the jury charge or omission therefrom the basis of an issue presented on appeal unless the party objects thereto before the jury retires to consider its verdict, stating distinctly that to which objection is made and the grounds of the objection." N.C. R. App. P. 10(a)(2).

¶ 80        A careful examination of the record demonstrates that Mr. Chisum has failed to properly preserve this issue for purposes of appellate review. Although Mr. Chisum asserted at the jury instruction conference that, pursuant to the trial court's instructions, "[w]e're punishing [defendants]," only "for 80% of the dollars to go right back [to them]," he failed to propose any instructions that would preclude what he now claims to be an inequitable outcome and asked the trial court to instruct the jury to simply decide how much in punitive damages should be awarded to each LLC without requesting that the jury attempt to specify the way in which any punitive damages award made in favor of Judges Road and Parkway should ultimately be distributed to the LLCs' owners. After defendants' trial counsel argued that

> if [the jury] were to award punitive damages, it is specifically damages that have to be reasonably related— they have to be exactly related to the injury that was—for which the jury compensated them. That injury would be to the LLC. So to divorce the punitive damages from the injury to the LLC that they're required to base the punitive damages on wouldn't make much sense[,]

the trial court determined that "the issue of who gets to participate in [the] punitive damage award can be sorted out with the final judgment." Following the jury instruction conference, the trial court instructed the jury to decide the amount, if any, of punitive damages that Richard Campagna and Rocco Campagna should be required to pay to Judges Road and Parkway in punitive damages, with any punitive damages award being limited to an amount which "bear[s] a rational relationship to the sum reasonably needed to punish" the two Campagnas.

After having allowed the jury to deliberate and reach its verdict with respect to the punitive damages issue on the basis of instructions to which he did not object, Mr. Chisum waived the right to seek to have the allocation of the jury's punitive damages award recalibrated at a later time. In essence, Mr. Chisum acquiesced in a jury instruction that provided that any punitive damages award that the jury elected to make would be paid to Judges Road and Parkway. Having done so, Mr. Chisum has no right to complain in the event that the trial court elected to enter judgment based upon the jury's verdict as it was returned. As a result, we decline to disturb the trial court's refusal to alter or amend the judgment so as to ensure that the Campagnas did not benefit from the jury's decision to award punitive damages in favor of Judges Road and Parkway.

### 3. Individual Claims for Fiduciary Duty and Constructive Fraud

¶ 82    Finally, Mr. Chisum argues that the trial court erred by dismissing his individual claims for breach of fiduciary duty and constructive fraud on the grounds that the assertion of these claims was authorized by this Court's decision in *Barger v. McCoy Hillard & Parks*, 346 N.C. 650 (1997), given that he suffered an injury that was separate and distinct from that suffered by Judges Road or Parkway. As a result, Mr. Chisum contends that he should have been permitted to pursue his individual claims in addition to the derivative claims that he asserted on behalf of the LLCs.

¶ 83    In response, defendants contend that members of an LLC do not owe a fiduciary duty to other members and that Mr. Chisum failed to allege and prove that he had suffered an injury as the result of defendants' conduct that was separate and distinct from any injury sustained by the LLCs. Thus, defendants urge the Court to determine that Mr. Chisum's attempt to assert individual claims for breach of fiduciary duty and constructive fraud in this case must necessarily fail.

¶ 84    The long-standing rule in this jurisdiction is that "shareholders cannot pursue individual causes of action against third parties for wrongs or injuries to the corporation that result in the diminution or destruction of the value of their stock." *Barger*, 346 N.C. at 658. On the other hand, however, this Court has recognized exceptions to the general rule "(1) where there is a special duty, such as a contractual duty, between the wrongdoer and the shareholder, and (2) where the shareholder

suffered an injury separate and distinct from that suffered by other shareholders."

*Id.* For that reason:

> a shareholder may maintain an individual action against a third party for an injury that directly affects the shareholder, even if the corporation also has a cause of action arising from the same wrong, if the shareholder can show that the wrongdoer owed him a special duty or that the injury suffered by the shareholder is separate and distinct from the injury sustained by the other shareholders or the corporation itself.

*Id.* at 658–59; *see also, e.g., Corwin v. British Am. Tobacco PLLC*, 371 N.C. 605, 613 (2018) (stating that "the second *Barger* exception[ ] focuses on whether the stockholder suffered a harm that is distinct from the harm suffered *by the corporation*"); *Green v. Freeman*, 367 N.C. 136, 142 (2013) (applying the *Barger* exceptions).

¶ 85          Prior to addressing the issue of whether Mr. Chisum satisfied the requirements for the assertion of an individual claim delineated in *Barger*, however, we must first determine whether he satisfied the requirements for the assertion of an individual breach of fiduciary duty or constructive fraud claim at all. As we have already noted, in order to successfully assert a claim for breach of fiduciary duty, "a plaintiff must show that: (1) the defendant owed the plaintiff a fiduciary duty; (2) the defendant breached that fiduciary duty; and (3) the breach of fiduciary duty was a proximate cause of injury to the plaintiff." *Sykes*, 372 N.C. at 339. Similarly, the assertion of a successful constructive fraud claim requires a plaintiff to show that he

or she suffered an injury proximately caused by a defendant's decision to take advantage of a position of trust. *See Terry*, 302 N.C. at 83.

¶ 86 A careful review of the record developed before the trial court satisfies us that Mr. Chisum's breach of fiduciary duty and constructive fraud claims fail because of his failure to demonstrate that he sustained a legally cognizable injury. In attempting to demonstrate the existence of the requisite injury, Mr. Chisum claims that the Campagnas attempted to "freeze [him] out of the LLCs," conducted "sham capital calls," acted as if he was no longer a member of the LLCs, and treated him in a manner that was inconsistent with his status as a member of Judges Road and Parkway. Instead of showing the existence of a legally cognizable injury, the facts upon which Mr. Chisum relies simply describe the specific steps that the Campagnas took to deprive Mr. Chisum of his ownership interests in Judges Road and Parkway and do not show the sort of injury that is necessary to support claims for breach of fiduciary duty and constructive fraud. As a result, since Mr. Chisum has failed to establish that he suffered a legally cognizable injury as the result of the Campagnas' conduct, we need not determine whether any injury that Mr. Chisum might have suffered was separate and apart from any injury suffered by Judges Road and Parkway. For that reason, we affirm the trial court's decision to dismiss Mr. Chisum's individual claims for breach of fiduciary duty and constructive fraud.

### III.    Conclusion

Thus, for the reasons set forth above, we hold that none of defendants' challenges to the trial court's judgment and related orders have merit and that, with the exception of his challenge to the trial court's decision to direct a verdict in favor of defendants with respect to his Carolina Coast-related claims, the same is true of Mr. Chisum's challenges to the trial court's judgment and related orders.  As a result, the trial court's judgments and related orders are affirmed, in part, and reversed, in part, and this case is remanded to the Superior Court, New Hanover County, for further proceedings not inconsistent with this opinion, including the holding of a new trial with respect to the claims relating to Carolina Coast that were asserted in Mr. Chisum's amended complaint.

AFFIRMED, IN PART, AND REVERSED AND REMANDED, IN PART.

Justices BERGER and BARRINGER did not participate in the consideration or decision of this case.